*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FEDERATED FINANCIAL CORP OF
AMERICA, INC., formerly known as
FEDERATED CAPITAL CORP,

UNPUBLISHED
October 17, 2019

      Plaintiff-Appellant,

v

No. 344181
Court of Claims
LC No. 16-000257-MT

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Plaintiff, Federated Financial Corporation of America, formerly known as Federated Capital Corporation, appeals as of right the May 21, 2018 order of the Court of Claims denying plaintiff's motion for summary disposition, and granting summary disposition under MCR 2.116(C)(7) and (C)(10) in favor of defendant, the Department of Treasury. We reverse, and remand for further proceedings consistent with this opinion.

## I. RELEVANT FACTUAL BACKGROUND

Plaintiff, a Michigan corporation engaged in financial and investment services, is a member of a unitary business group (UBG) along with Federated Financial Centre, Inc., Federated Service Solutions, Inc., Ferris Management Corporation, Ferris Management Group, LLC, Federated Railways, Inc., Federated Railcars, Inc., and Great Lakes Central Railroad, Inc. All seven affiliates of the UBG elected to be treated as "S" Corporations for purposes of federal income taxation.

The issue in this case comes down to when plaintiff filed its 2009 Michigan Business Tax (MBT) return. The date that the return was filed in turn determines whether credits claimed on plaintiff's MBT return are valid, and whether defendant could issue an assessment for tax deficiency. In the Court of Claims, both parties filed motions for summary disposition. Plaintiff claimed it mailed the return to defendant on November 15, 2010. Accordingly, plaintiff maintained that defendant's July 2016 assessment was untimely, and therefore barred by MCL

-1-

205.27a(2), which provides that "[a] deficiency, interest, or penalty shall not be assessed after the expiration of 4 years after the date set for the filing of the required return or after the date the return was filed, whichever is later." MCL 205.27a(2).

Conversely, defendant claimed that it did not receive plaintiff's 2009 MBT return until after defendant notified plaintiff that a tax return for 2009 was not filed. Defendant argued that plaintiff was not entitled to the credits claimed because the tax return was filed after the expiration of the limitations period for filing an original return. In support of its position, defendant also cited the portion of MCL 205.27a(2) which states, "[a] taxpayer shall not claim a refund of any amount paid to the department after the expiration of 4 years after the date set for the filing of the original return." MCL 205.27a(2). Accordingly, plaintiff had until the "last day of the fourth month after the end of the taxpayer's tax year" to file its 2009 MBT return. The last day of the fourth month after the end of plaintiff's 2009 tax year was April 30, 2010, and therefore plaintiff had until April 30, 2014 to claim the credits at issue. However, defendant argued, plaintiff's tax return was not filed until December 15, 2014.

In response, plaintiff argued that under the mailbox rule, plaintiff had submitted sufficient documentary evidence to create a rebuttable presumption that because it had placed the return in the mail on November 15, 2010, it had been received by defendant and therefore timely filed. In support of this position, plaintiff relied on two affidavits attached to its complaint. The first affidavit from plaintiff's tax professional, Bruce Kaye, stated that he printed plaintiff's 2009 MBT return on November 3, 2010, and in accordance with his usual practice, he would have delivered it to plaintiff within "one or two days of that date" either personally or via "electronic mail." Kaye attached to his affidavit a print out of his "client status histories," showing the work history of the files for the disputed return. The printout was consistent with the facts in his affidavit.

The second affidavit was from plaintiff's Corporate Controller and Vice President of Accounting, Gerard B. Jarobe. Jarobe had "supervised the preparation of, reviewed, and was responsible for, the filing of all tax returns" for plaintiff since 1999. Jarobe averred that it was his usual business practice that upon receiving the return from Kaye, the return would be signed by either himself or by Louis P. Ferris, Jr, plaintiff's chief executive officer. Jarobe would then "place the signed returns in a sealed envelope properly addressed to the appropriate taxing authority and then place the envelope with [plaintiff's] mail department." All tax returns "were reviewed, signed and mailed at or near the time of their receipt from" Kaye.

After reviewing the record evidence, the Court of Claims ultimately concluded that:

[P]laintiff failed to submit sufficient, non-speculative evidence that the 2009 MBT return was submitted for mailing in November 2010. In this respect, plaintiff's documentary evidence is not lacking in regard to plaintiff's mailroom practices; rather, the lack of proof in this case occurs at an earlier stage, i.e., whether the return made it to the mailroom in the first instance. As a result, plaintiff's ordinary mailing practices, and the presumption created by the mailbox rule, do not become relevant. In this respect, Kaye merely postulated that he *would* have seen the 2009 MBT return to plaintiff. Kaye maintained that he "would have" sent the return shortly after printing it, but he never identified the

-2-

date on which he sent it to plaintiff. Furthermore, Jarobe never expressly stated that he reviewed the particular return at issue or that he ever prepared the return for mailing. At best, he was able to posit that he thought he would have done so. Nor – although he made general averments regarding the timeframe it typically would have taken him to prepare a return for mailing – could Jarobe identify a particular date on which he would have submitted the 2009 MBT return to plaintiff's mailroom personnel. Based on these deficiencies, plaintiff's documentary evidence is too speculative with regard to whether the 2009 MBT return ever made it to the mailroom in November 2010 as plaintiff claims.

Accordingly, the Court of Claims denied plaintiff's motion for summary disposition, and granted summary disposition in favor of defendant under MCR 2.116(C)(7) and (C)(10). This appeal followed.

## II. STANDARD OF REVIEW

We review the Court of Claims' decision on a motion for summary disposition de novo. *Sabbagh v Hamilton Psychological Services, PLC*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 343204); slip op at 4. Summary disposition under MCR 2.116(C)(7) is appropriate where a claim is barred by the statute of limitations. *Id*.; slip op at 4. This Court considers "all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-433; 824 NW2d 318 (2012) (citation omitted).

Summary disposition under MCR 2.116(C)(10) is appropriate where "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *George v Allstate Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341876); slip op at 5 (quotation marks and citations omitted). When reviewing a summary disposition motion brought under MCR 2.116(C)(10), the "trial court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id*.; slip op at 5. Reasonable inferences are drawn in favor of the nonmoving party. *Id*.; slip op at 5.

## III. ANALYSIS

At the center of this case is plaintiff's desire to claim credits on its 2009 MBT return, and whether plaintiff's claim for those credits is barred by the statute of limitations found in MCL 205.27a(2), a provision of the revenue act, MCL 205.1 *et seq*. MCL 205.27a(2) provides:

(2) A deficiency, interest, or penalty shall not be assessed after the expiration of 4 years after the date set for the filing of the required return or after the date the return was filed, whichever is later. The taxpayer shall not claim a refund of any amount paid to the department after the expiration of 4 years after the date set for the filing of the original return. A person who has failed to file a return is liable

for all taxes due for the entire period for which the person would be subject to the taxes. If a person subject to tax fraudulently conceals any liability for the tax or a part of the tax, or fails to notify the department of any alteration or modification of federal tax liability, the department, within 2 years after discovery of the fraud or the failure to notify, shall assess the tax with penalties and interest as provided by this act, computed from the date on which the tax liability originally accrued. The tax, penalties, and interest are due and payable after notice and hearing as provided by this act.

Plaintiff argues on appeal that although MCL 205.27a(2) only mentions "a refund," the Court of Claims erred by reading into the statute a provision of MCL 205.30(2) that treats a claim for a credit in excess of taxes due as "a claim for a refund." We disagree.

Regarding MCL 205.27a(2), the Court of Claims concluded in a footnote:

Although this sentence only mentions refunds, this provision applies to claiming credits as well as refunds. See MCL 205.30(2) (treating a claim for a credit in excess of taxes due as "a claim for a refund" and applying the four-year limitations period set forth in MCL 205.27a(2) to such a claim).

We agree with the Court of Claims' interpretation. MCL 205.30(2) specifically states that "[a] taxpayer who paid a tax that the taxpayer claims is not due may petition the department for refund of the amount paid within the time period specified as the statute of limitations in [MCL 205.27a]." Additionally, MCL 205.30(1) provides that defendant "shall credit or refund an overpayment of taxes[.]"

Moreover, "[s]tatutory language should be read in harmony with the entire legislative scheme, *York Charter Twp v Miller*, 322 Mich App 648, 662; 915 NW2d 373 (2018), and under the doctrine of *in pari materia*, statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law[.] *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015)." *People v Wood*, 326 Mich App 561, 574; 928 NW2d 267 (2018). Where MCL 205.30, which deals with credits and refunds, specifically mentions the limitations period created under MCL 205.27a, the Court of Claims properly read the provisions in harmony. Accordingly, we conclude that plaintiff's claim for credits on its 2009 MBT return is subject to a four-year statute of limitations. See also MCL 205.27a(2) where it states, "[a] person who has failed to file a return is liable for all taxes due for the entire period for which the person would be subject to the taxes." If plaintiff did, in fact, fail to timely file its 2009 MBT return, it would be liable for all taxes due without the benefit of any credits to which it would otherwise be entitled.

However, we conclude that the Court of Claims erred in granting summary disposition in favor of defendant where a material question of fact remains regarding when plaintiff first filed its 2009 MBT return. In the Court of Claims, and on appeal, plaintiff argues that under the mailbox rule, because it mailed its 2009 MBT return in accordance with its business customs and habits on or about November 15, 2010, it is entitled to the presumption that defendant received the return. If the timeline presented by plaintiff were accurate, defendant would have had until November 15, 2014 to issue an assessment for tax delinquency. MCL 205.27a(2). Further, it

follows that the assessment issued by defendant in July 2016 barring plaintiff from claiming any credits on its 2009 MBT return was untimely, as it is also subject to the four-year statute of limitations found in MCL 205.27a.

The mailbox rule, in its simplest form, provides: "Proof of the mailing of a notice properly addressed and postpaid raises a presumption that the notice was received by the person to whom it was directed." *Lowry v Saginaw Specialty Co*, 128 Mich 246, 248; 87 NW 194 (1901). The rule has been expanded so that a letter mailed in due course of business is presumed to have been received. *Long-Bell Lumber Co v Nyman*, 145 Mich 477, 481; 108 NW 1019 (1906). Moreover, in *Good v Detroit Automobile Inter-Insurance Exchange*, 67 Mich App 270, 276; 241 NW2d 71 (1976),[1] this Court concluded that "upon proper evidence of business custom and habit of a commercial house as to addressing and mailing, the mere execution of [a] letter in the usual course of business rebuttably presumes subsequent receipt by the addressee."

In *Good*, this Court considered "what evidence of a private business or custom is necessary to prove the mailing of a letter." *Good*, 67 Mich App at 275. This Court "adopted the view that evidence of a business custom or usage [wa]s sufficient to establish the fact of mailing without further testimony by an employee of compliance with the custom." *Id.* This Court explained:

> The rationale supportive of the minority rule is that to require employees to testify that they complied with the ordinary business practice would be merely cumulative, considering the modern volume of corporate correspondence. Mail clerks or other employees could hardly be expected to remember posting a particular letter or emptying a mail tray on a particular day and most likely could only reiterate the executive's description of the office practice. [*Id.*]

Accordingly, this Court held "that upon proper evidence of business custom and habit of a commercial house as to addressing and mailing, the mere execution of the letter in the usual course of business rebuttably presumes subsequent receipt by the addressee." *Id.* at 276.

Although defendant and the Court of Claims heavily relied on the fact that there was no evidence that plaintiff's 2009 MBT return ever made it to the mailroom, all plaintiff needed to prove to establish a presumption under the mailbox rule was that the tax return was executed in the usual course of business. *Id.* Here, Kaye averred that he printed plaintiff's return on November 8, 2010, and that his usual course of business was to send the return to plaintiff within one or two days. Jarboe averred that once he received the returns, he would facilitate their signature, and would then "place the signed returns in a sealed envelope properly addressed to the appropriate taxing authority and then place the envelope with FCC's mail department."

---

[1] As noted by the Court of Claims, although *Good* was decided before November 1, 1990, it would not normally have precedential effect. MCR 7.215(J)(1). However, our Supreme Court has adopted the standard articulated in *Good* in *Morales v Auto-Owners Ins Co*, 458 Mich 288, 304 n 8; 582 NW2d 776 (1998), and, therefore, the *Good* standard constitutes binding precedent.

Under *Good*, this evidence was sufficient to entitle plaintiff to the presumption that it mailed its 2009 MBT return in November 2014. *Good*, 67 Mich App at 275.

However, the presumption that plaintiff mailed its 2009 MBT return in November 2014 is rebuttable. Our Supreme Court has explained:

> While a presumption arises that a letter with a proper address and postage will, when placed in the mail, be delivered by the postal service, this presumption can be rebutted with evidence that the letter was not received. If such evidence is presented . . . then a question of fact arises regarding whether the letter was received. [*Goodyear Tire & Rubber Co v City of Roseville*, 468 Mich 947, 947; 664 NW2d 751 (2003) (citations omitted).]

Here, defendant submitted its own affidavit, in which it averred that plaintiff's 2009 MBT return was not found in its database. Rather, defendant received plaintiff's 2009 MBT return for the first time in 2014. Accordingly, defendant's affidavit created a question of fact that precluded summary disposition for either party. Indeed, a material question of fact remains regarding when plaintiff filed its 2009 MBT return, and in turn, whether it is entitled to the credits claimed on that return. Thus, the Court of Claims erred in granting summary disposition in favor of defendant.

Reversed, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel